UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

JEAN DENIS,

                Petitioner,

- against -

SUSAN I. SCHULTZ, Superintendent,
Mid-Orange Correctional Facility,

                Respondent.

----------------------------------------------------------X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT
★ DEC 29 2006
P.M. _____
TIME A.M. _____

**MEMORANDUM AND ORDER**

1:04-cv-1023-ENV

VITALIANO, D.J.

Jean Denis has petitioned this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, claiming that his appellate counsel was ineffective and that a jury verdict convicting him of second-degree manslaughter was based on insufficient evidence. For the reasons set forth below, the writ is denied and the petition is dismissed.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Before his convictions for second-degree manslaughter and tampering with physical evidence, petitioner ran a small business that provided, among other services, preparation of income tax returns. In October 1998, Marie Cerant hired petitioner to prepare certain income tax returns and paid him $300 in advance for his services. Shortly thereafter, Cerant decided that she no longer needed petitioner's help and visited his office to demand a refund. Petitioner responded by refunding $200 and keeping the remaining $100 for services already rendered. Despite being refunded $200, Cerant would nonetheless return to petitioner's office just a few days later on November 9, 1998. She would never again be seen alive.

Petitioner initially denied having any involvement in Cerant's disappearance. He also denied that a bite mark on his chest had anything to do with her. However, an investigation would reveal Cerant's blood in petitioner's office and, on December 16, 1998, police discovered Cerant's dismembered body, along with her clothing and jewelry, under concrete that had recently been laid in petitioner's garage. Due to the decomposed state of Cerant's dismembered remains, which were not discovered until five weeks after her death, the coroner was unable to determine an exact cause of death.

In response to the discovery of Cerant's body in his garage, petitioner admitted having a role in her death. He was indicted on two counts of second-degree murder, N.Y. Penal Law § 125.25(1), (3), and one count of tampering with physical evidence, N.Y. Penal Law § 215.40(2). At trial, petitioner admitted that he had been involved in a confrontation with Cerant that had led to her death, but he maintained that he had merely acted in self-defense with no intent to kill. At the time of her death, Cerant was 50-years-old, five-foot-three inches tall, and weighed approximately 155 pounds. Petitioner was 43-years-old, five-foot-eight inches tall, and also weighed approximately 155 pounds.

Petitioner claimed at trial that, on November 9, 1998, Cerant had unexpectedly walked into the back area of his office appearing very upset and demanding that he return the remaining money that she believed was owed her. Petitioner attempted to appease Cerant but she grew increasingly violent and initiated a struggle, biting and repeatedly attempting to choke petitioner. He claimed that in an attempt to break free from a choke hold, he flipped Cerant over his neck, causing her to land on her back. She then began to shake until her body stiffened. Petitioner attempted to take her pulse but found none. Fearing that he would be accused of murder,

petitioner claims to have fled the scene in a nervous flurry, leaving the victim behind. Later, when he had calmed, petitioner returned to the office and decided to conceal Cerant's remains rather than call authorities.

At trial, the prosecution contested petitioner's account by arguing that his actions following the incident – leaving the victim to die in his office and then dismembering and hiding her body – were inconsistent with his claim of self-defense. The prosecution called Richard Darbouze, a friend of petitioner's who had helped him dispose of Cerant's body. Darbouze testified that, after the incident, petitioner admitted that he had strangled Cerant, even while she pleaded for her life, because he feared she would go to the police.

A jury apparently accepted much of petitioner's account as he was acquitted of second-degree murder and first-degree manslaughter. However, the jury convicted him of reckless manslaughter, N.Y. Penal Law § 125.15(1), and tampering with physical evidence, N.Y. Penal Law § 215.40(2). On August 17, 1999, petitioner was sentenced to consecutive prison terms of two and two-thirds to eight years on the reckless manslaughter count and one and one-third to four years on the tampering with physical evidence count.

In April 2000, petitioner collaterally attacked his conviction, moving the New York State Supreme Court, Kings County, pursuant to N.Y. C.P.L. § 440.10 ("CPL 440"), to vacate his judgment of conviction because his right to testify before the grand jury had been violated. On April 24, 2000, the court denied petitioner's *pro se* motion because he had not timely sought to dismiss the indictment on the basis of the grand jury claim. The court further held that any failure by petitioner's counsel to make such a motion did not, standing alone, amount to ineffective assistance. On October 13, 2000, the New York State Supreme Court, Appellate

3

Division, Second Department ("Second Department") denied petitioner's application seeking leave to appeal from the trial court's denial of the CPL 440 motion.

Petitioner also directly appealed his conviction to the Second Department. His appellate counsel filed an exhaustive thirty-four page brief in which she argued that petitioner's second-degree manslaughter conviction was against the weight of evidence and, relatedly, that the prosecution had failed to disprove petitioner's justification defense beyond a reasonable doubt. On September 24, 2001, the Second Department explicitly rejected these contentions and affirmed petitioner's conviction. People v. Denis, 286 A.D.2d 775, 730 N.Y.S.2d 732 (2d Dep't 2001). On December 7, 2001, Judge Albert M. Rosenblatt of the New York State Court of Appeals denied petitioner's application seeking leave to appeal the Second Department's affirmance. People v. Denis, 97 N.Y.2d 681, 738 N.Y.S.2d 296, 764 N.E.2d 400 (2001).

In November 2002, petitioner again sought to collaterally attack his conviction, this time moving the New York State Supreme Court, Kings County, pursuant to CPL 440, to vacate his judgment of conviction on the ground that his trial counsel was ineffective for failing to move to dismiss the indictment, interview witnesses, and call a medical expert at trial. On January 22, 2003, the motion was denied because the claims could have been raised either on direct appeal or in the prior CPL 440 motion, but were unjustifiably not raised. See N.Y. C.P.L. § 440.10(2)(c), (3)(c). Furthermore, petitioner had not supported his claims with sworn factual allegations. See N.Y. C.P.L. § 440.30(4)(d).

On July 14, 2004, petitioner moved the Second Department for a writ of error *coram nobis* on the ground that his appellate counsel was ineffective for failing to raise an ineffective assistance of counsel claim based on trial counsel's alleged failures to: (i) secure a psychologist

4

as an expert witness to testify about petitioner's mental state during the crime; (ii) investigate two witnesses critical to the defense; (iii) secure a forensic pathologist to refute the coroner's testimony regarding the cause of death; and (iv) request a directed verdict of criminally negligent homicide. On November 15, 2004, the Second Department denied petitioner's motion for a writ of error *coram nobis*, finding that petitioner had failed to establish that he was denied the effective assistance of appellate counsel. People v. Denis, 12 A.D.3d 525, 783 N.Y.S.2d 866 (2d Dep't 2004). On February 22, 2005, Judge Robert S. Smith of the New York State Court of Appeals denied petitioner's application seeking leave to appeal the Second Department's decision. People v. Denis, 4 N.Y.3d 797, 795 N.Y.S.2d 173, 828 N.E.2d 89 (2005).

On November 29, 2003, petitioner submitted the instant petition for a writ of habeas corpus. He claims that the evidence at trial was legally insufficient to support a verdict of second-degree manslaughter. He also claims that appellate counsel was ineffective due to her failure to raise a claim of ineffective assistance of trial counsel.

## STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214, 1219 (1996) ("AEDPA"), a writ of habeas shall not issue with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication (1) was contrary to or involved an unreasonable application of clearly established Federal law, as determined by the United States Supreme Court; or (2) was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

# DISCUSSION

I.  *Insufficiency of Trial Evidence*

Petitioner claims that the evidence presented at trial was insufficient to support his conviction for second-degree manslaughter. In assessing a claim regarding the sufficiency of trial evidence, a habeas court must view all evidence in a "light most favorable to the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial." Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002) (citing Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). On review, inferences are drawn in favor of the prosecution, and the court must uphold a verdict based on reasonable inferences, even those drawn solely from circumstantial evidence. See United States v. Quattrone, 441 F.3d 153, 169 (2d Cir. 2006); United States v. Moore, 54 F.3d 92, 100 (2d Cir. 1995). "Possible innocent motivation for conduct does not prevent a jury from drawing inferences adverse to the defendant's proffered explanation." Quattrone, 441 F.3d at 169 (citing United States v. Macpherson, 424 F.3d 183, 190 (2d Cir. 2005)). Furthermore, in assessing a jury's conclusion, the reviewing court should look to the evidence in its totality, and should not take a piecemeal approach. United States v. Podlog, 35 F.3d 699, 705 (2d Cir. 1994); United States v. Ragosta, 970 F.2d 1085, 1090 (2d Cir. 1992). Given that a reviewing court may not substitute its judgment for that of a rational jury, the burden of a convicted individual in challenging the sufficiency of evidence upon which he was convicted has often been described as a heavy one. See, e.g., United States v. Santos, 449 F.3d 93, 102 (2d Cir. 2005); United States v. Glenn, 312 F.3d 58, 63 (2d Cir. 2002).

Petitioner has failed to show that the challenged state court determinations were contrary

to, or an unreasonable application of, any Supreme Court precedent, and specifically, the standard for insufficiency of evidence put forth in Jackson v. Virginia. Reviewing the record deferentially, as it must, this Court finds ample evidence in the record from which a reasonable jury may have concluded that petitioner was guilty beyond a reasonable doubt of reckless manslaughter. There is record evidence that shows petitioner: (i) was alone with the victim at the time of her death; (ii) disposed of the victim's body in a manner that reflects consciousness of guilt; (iii) told an accomplice that he had strangled the victim; and (iv) initially lied about the incident to police and his family by denying any involvement. Even more, by petitioner's own account, he had engaged in a physical struggle with the older and shorter victim, and immediately following the struggle, he fled the scene rather than seek medical attention. Viewing all the evidence in its totality, then, this Court cannot find fault with petitioner's conviction on the ground of insufficient evidence.

The trial was, in essence, one about credibility; the victim was killed behind closed doors and her remains were of limited evidentiary value. At trial, petitioner did not dispute that he engaged in a physical confrontation with the victim, and the evidence made clear that this confrontation caused her death. The jury was thus left to weigh the veracity of petitioner's account in determining whether he acted justifiably, recklessly, or with intent to kill. The jury apparently resolved issues of credibility partially in petitioner's favor by rejecting the prosecution's theory that he had intentionally killed the victim, but determining that he had nonetheless acted recklessly in causing her death. Again, the Court notes that guilt may be proven by circumstantial evidence, and here, petitioner's actions following the incident directly undercut his later contention that he had acted innocently in self-defense. Cf. Mallette v. Scully,

7

752 F.2d 26, 32 (2d Cir. 1984) ("New York courts have long held that a defendant's actions subsequent to a crime are proper evidence of his guilt.").

Furthermore, this Court cannot find unreasonable the jury's conclusion that petitioner acted recklessly. Since it is "seldom possible to present testimonial or direct evidence of an accused's state of mind," a defendant's mental status must often be inferred through circumstantial evidence. See Mallette, 752 F.2d at 32; United States v. Kwong, 14 F.3d 189, 194 (2d Cir. 1994). As one judge of this Court has recently noted, while "in some cases the evidence may be sufficient to support conflicting inferences of both intentional conduct and reckless conduct," the reviewing court must nonetheless defer to the resolution of that conflict by finders of fact. Flowers v. Fisher, No. 03-cv-5405, 2006 WL 3050876, at *9 (E.D.N.Y. Oct. 23, 2006) (citing People v. Tankleff, 199 A.D.2d 550, 554, 606 N.Y.S.2d 707 (2d Dep't 1993)). Here, the jury may very well have concluded, for instance, that petitioner acted unjustifiably and recklessly by continuing in a physical struggle with an older woman, violently flipping her over his back, and leaving her to die. Given the overwhelming evidence and the role that credibility played in this case, the jury's determination should not be second-guessed by a reviewing court. No exception to the Second Department's affirmance of petitioner's conviction can be taken on this basis.

II.   *Ineffective Assistance of Appellate Counsel*

Petitioner claims that his appellate counsel was ineffective due to her failure to raise a claim of ineffective assistance of trial counsel. Petitioner specifically argues that an appeal should have been raised regarding trial counsel's failures to: (i) secure a psychologist to testify regarding petitioner's state of mind during the crime; (ii) investigate two witnesses who he

8

claims were critical to his defense; (iii) secure a forensic pathologist to refute the coroner's testimony regarding the victim's cause of death; and (iv) request a directed verdict of criminally negligent homicide.

To prevail on a claim of ineffective assistance of appellate counsel, petitioner must show that: (i) counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms;" and (ii) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); see also Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992) (two-part test enunciated in Strickland applies to claims for ineffective assistance of *appellate* counsel). Under the Strickland test, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

Petitioner's claim was raised in state court and rejected on the merits by the Second Department. People v. Denis, 12 A.D.3d 525, 783 N.Y.S.2d 866 (2d Dep't 2004). Thus, in reviewing petitioner's claim, this Court inquires only into whether the Second Department's decision was contrary to or involved an unreasonable application of the standard for ineffective assistance of counsel articulated in Strickland. Here, petitioner has utterly failed to meet this highly demanding standard.

In opposing petitioner's motion to the Second Department for a writ of error *coram nobis*, the state submitted the affirmation of Lynn W.L. Fahey, who supervised petitioner's appellate representation. Petitioner had raised one ground for an ineffective assistance of counsel claim when meeting with appellate counsel, but counsel informed petitioner that such a claim was not

viable given trial counsel's performance on the record and given that trial counsel had obtained an acquittal on the two top grounds of second-degree murder and first-degree manslaughter.[1] Appellate counsel determined, upon a review of the record, that trial counsel had made appropriate motions and objections, vigorously cross-examined witnesses, presented a defense, and gave a coherent summation tying together the themes of the defense. Appellate counsel also determined that trial counsel had skillfully dealt with the uncontroverted and highly damaging evidence of how petitioner had dismembered and disposed of the victim's body.

Furthermore, appellate counsel determined that trial counsel's decisions about whether to call particular witnesses were strategic, and thus unlikely to be successful on a claim of ineffective assistance of counsel. In assessing the quality of a criminal defendant's representation, courts will not Monday-morning quarterback acts or omissions of trial counsel that, without the benefit of hindsight, may have been considered sound trial strategy. See Strickland, 466 U.S. at 689. "'[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable,' and even strategic choices made after less than complete investigation do not amount to ineffective assistance–so long as the known facts made it reasonable to believe that further investigation was unnecessary." Henry v. Poole, 409 F.3d 48, 63 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 690-91).

Counsel has no duty to raise every non-frivolous claim on appeal; to the contrary, reviewing courts recognize that the better strategy may be to focus on the appellant's most

---

[1] Trial counsel also obtained a favorable result at sentencing, where defendant was sentenced to less than the maximum. Petitioner was sentenced to consecutive terms of two and two-thirds to eight years for reckless manslaughter and one and one-third to four years for tampering with physical evidence.

promising claims. See Jones v. Barnes, 463 U.S. 745, 751-53, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). For a petitioner to be successful on a claim of ineffective assistance of appellate counsel on the ground of counsel's failure to raise claims, he must show that appellate counsel omitted "significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo v. Henderson, 13 F.3d 528, 533-34 (2d Cir. 1994). Also relevant here is that the Second Department would not have reviewed any additional claims that referenced off-the-record matters; counsel, therefore, could not have been ineffective in failing to press these claims on direct appeal. See Young v. McGinnis, 411 F. Supp. 2d 278, 335 (E.D.N.Y. 2006); Simms v. Moscicki, No. 06-cv-2056, 2006 WL 2466811, at *16 (S.D.N.Y. Aug. 25, 2006); Johnson v. Walsh, No. 9:01-cv-1651, 2005 WL 928616, at *18 (N.D.N.Y. Apr. 20, 2005). The claims would likely have fared no better in a CPL 440 motion – the proper motion in which to address off-the-record claims – because petitioner had already brought an ill-advised *pro se* CPL 440 motion before appellate counsel had been assigned. When petitioner later attempted, on his own, to bring another CPL 440 motion based on the ineffectiveness of trial counsel, the court deemed the motion procedurally barred because he had failed to raise the claim in his initial CPL 440 motion. See N.Y. C.P.L. § 440.10(3)(c).

A review of the record reveals that trial counsel's performance was not deficient by any means. The contentions raised by petitioner are not "significant and obvious" grounds that would likely have made a difference if raised on direct appeal. Petitioner first asserts that trial counsel failed to investigate and call two "critical" witnesses. Yet, all these witnesses could testify to was their knowledge of the victim's agitation and her persistence in seeking money that she believed petitioner owed her. Even if these witnesses could show, as petitioner asserts, that

the victim had engaged in "an ongoing campaign of extortion-like activities," the evidence would still not bolster petitioner's self-defense claim, as the victim's alleged extortionate campaign may have arguably provided an explanation of why petitioner, previously a law-abiding individual, had acted out in such a manner. Furthermore, given that petitioner and Richard Darbouze, a prosecution witness, had already testified to the victim's persistence in seeking money, it is not clear what was to be gained by calling additional but cumulative witnesses. At trial, there was no dispute that the victim sought the return of money when visiting petitioner or that there was a physical confrontation that the victim may very well have initiated; the more central issue involved what happened during that physical confrontation. The so-called "critical witnesses" could not address this issue. Given the cumulative nature of their testimony regarding an ancillary aspect of the case, trial counsel may have chosen any number of reasons to focus the presentation of evidence elsewhere.

Petitioner's claim regarding counsel's failure to call a forensic pathologist is frivolous. The prosecution's pathologist was unable to pinpoint a cause of death. In fact, the pathologist's testimony undercut the prosecution's theory that petitioner had strangled the victim. It was this very testimony that likely helped to secure petitioner's acquittal on charges of second-degree murder and first-degree manslaughter, and counsel apparently decided to use this testimony to raise doubts rather than take the risk of calling another expert. Counsel may have also determined it better to turn the jury's attention away from the gory details regarding the condition in which the victim's dismembered body was found. Finally, and most significantly, petitioner has not put forth a reasonable explanation of how such testimony may have been helpful to his case.

Similarly, petitioner claims that his trial counsel should have called a psychologist. Yet, again, he fails to demonstrate why a psychologist's testimony would have been helpful to his case, or even admissible at trial. Petitioner seems to suggest that a psychologist could have explained why he was "not thinking clearly during the entire struggle." Such testimony would, however, undercut petitioner's entire theory of the case that he was in fact thinking clearly and had acted in a justifiable manner.

Petitioner's remaining claims regarding his trial and appellate counsel are equally meritless. The record reveals that trial counsel performed within the realm of reasonableness. As such, this Court concludes that appellate counsel's determination regarding the likelihood of success on a claim of ineffective assistance of trial counsel was also well within realm of reasonableness required by Strickland. The Second Department's denial of petitioner's claim of ineffective assistance of trial counsel was not and cannot be an unreasonable application of the test enunciated in Strickland. Therefore, petitioner's claim is baseless.

## CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus is dismissed. Because Petitioner has not made a substantial showing of a denial of a constitutional right, a certificate of appealability shall not issue with respect to any of petitioner's claims.

**SO ORDERED.**

Dated: Brooklyn, New York
December 29, 2006

ERIC N. VITALIANO
United States District Judge

13